IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GRAYBAR ELECTRIC COMPANY, INC.                                            PLAINTIFF

v.                                Case No. 4:18-cv-4128

WEYERHAEUSER COMPANY and
PREMIER IEC, LLC                                                   DEFENDANTS

**ORDER**

Before the Court is Separate Defendant Weyerhaeuser Company's ("Weyerhaeuser")[1] Motion to Compel Arbitration and Stay Claims. (ECF No. 9). Plaintiff Graybar Electric Company, Inc. ("Graybar") filed a response. (ECF No. 12). Separate Defendant Premier IEC, LLC ("Premier") has not filed a response, and its time to do so has passed. *See* Local Rule 7.2(b). The Court finds the matter ripe for consideration.

**I. BACKGROUND**

Weyerhaeuser is the owner of a sawmill located in Dierks, Arkansas (the "Weyerhaeuser mill"). On May 1, 2017, Weyerhaeuser and Premier entered into a contract for Premier's electrical contractor services at the Weyerhaeuser mill (the "Weyerhaeuser-Premier contract"). (ECF No. 9, p. 1). The Weyerhaeuser-Premier contract provides, *inter alia*, that Premier must keep Weyerhaeuser's property free of liens and that if Weyerhaeuser receives notice of a lien caused by Premier, Weyerhaeuser may withhold payment to Premier until the lien has been fully paid or waived. (ECF No. 9, p. 9). The Weyerhaeuser-Premier contract also provides for the resolution by binding arbitration of "[a]ny dispute between the parties regarding this Contract, including a

---

[1] Weyerhaeuser indicates that it is improperly named in the complaint and that its proper name is "Weyerhaeuser NR Company." For ease of reference, the Court will refer to it as "Weyerhaeuser."

dispute over a party's performance of its obligations or interpretation of the Contract's terms, other than a dispute when a remedy sought in good faith is injunctive relief." (ECF No. 9-1, p. 12). The Weyerhaeuser-Premier contract provides further that either party may seek to compel arbitration if the other party refuses to participate in arbitration.

At some time subsequent to the execution of the Weyerhaeuser-Premier contract, Graybar and Premier entered into an agreement under which Graybar would furnish and deliver electrical supplies, materials, and/or equipment at Premier's request for use at the Weyerhaeuser mill.[2] Graybar alleges that it provided materials to Premier and that Premier commenced work on the Weyerhaeuser mill using Graybar's furnished materials, incorporating said materials into the mill. Graybar alleges further that it provided Premier with invoices describing the materials provided and costs of the same, but Premier failed to compensate Graybar for significant portions of the provided materials.

Graybar states that on June 1, 2018, it provided notice to Weyerhaeuser and Premier that if the unpaid bills were not paid in full, Graybar would place a construction lien on the Weyerhaeuser mill pursuant to Ark. Code Ann. § 18-44-115. On June 4, 2018, Premier notified Weyerhaeuser that it would be withdrawing from the Weyerhaeuser mill, citing "unforeseen business complications." (ECF No. 9, pp. 1, 19). Weyerhaeuser states that Premier had not completed its contractual obligations when it withdrew, causing Weyerhaeuser to have to hire replacement contractors.

Graybar states that on July 2, 2018, it provided Weyerhaeuser and Premier a notice of intent

---

[2] Graybar's complaint alleges that Graybar and Premier contracted "[i]n or about January 2017" (ECF No. 4, p. 2), but Graybar's response opposing the instant motion indicates that Graybar and Premier contracted "in or about January 2018." (ECF No. 13, p. 3). However, this discrepancy makes no difference for purposes of deciding the instant motion.

2

to place a lien on the Weyerhaeuser mill, pursuant to Ark. Code Ann. § 18-44-115. On July 23, 2018, Graybar filed a Statement of Account and Claim of Lien with the Circuit Clerk and Ex-Officio Recorder for Howard County, Arkansas, in the amount of $766,397.60. On August 13, 2018, Graybar filed this lien foreclosure case in the Circuit Court of Howard County, Arkansas, seeking, *inter alia*, to recover the amount of the materialmen's lien placed on the Weyerhaeuser mill.

On August 17, 2018, Weyerhaeuser filed a demand for arbitration against Premier, alleging that Premier breached the Weyerhaeuser-Premier contract. (ECF No. 9-2, p. 1). The arbitration between Weyerhaeuser and Premier is currently pending before the American Arbitration Association. (ECF No. 9-2, p. 2). Weyerhaeuser states that Premier has not participated in any arbitration conference calls to date, despite receiving the demand for arbitration.

On September 11, 2018, Weyerhaeuser removed this case to this Court pursuant to 28 U.S.C. § 1332. On October 3, 2018, Weyerhaeuser filed the instant motion, stating that it and Premier's dispute regarding Premier's performance under the Weyerhaeuser-Premier contract falls within the scope of a valid arbitration agreement. Accordingly, Weyerhaeuser asks the Court to compel it and Premier to engage in binding arbitration regarding that dispute. Weyerhaeuser also argues that Graybar's claims against Defendants are inextricably intertwined with Weyerhaeuser and Premier's arbitrable dispute and, thus, the Court should also compel Graybar to submit to arbitration along with Weyerhaeuser and Premier. Alternatively, Weyerhaeuser asks the Court to stay this case pending the resolution of it and Premier's arbitration. Graybar opposes the motion.

## II. DISCUSSION

The instant motion presents multiple requests. First, Weyerhaeuser asks the Court to compel it and Premier to submit to binding arbitration regarding their dispute as to each party's

3

performance of obligations under the Weyerhaeuser-Premier contract. Second, Weyerhaeuser asks the Court to also compel Graybar to submit to arbitration of its claims alongside Weyerhaeuser and Premier. Third, Weyerhaeuser alternatively asks the Court to stay this case pending the resolution of it and Premier's arbitration proceedings. The Court will address each request in turn.

**A. Arbitration Between Weyerhaeuser and Premier**

Weyerhaeuser submits that it and Premier's claims against one another fall within the scope of a valid arbitration agreement. Thus, Weyerhaeuser requests that the Court compel it and Premier to submit to binding arbitration as to those claims.[3]

In addressing motions to compel arbitration, courts generally ask: (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement. *E.E.O.C. v. Woodmen of the World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007). These two determinations are guided by a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The Court will separately determine whether a valid arbitration agreement exists and whether Weyerhaeuser and Premier's dispute falls within the scope of that agreement.

**1. Valid Arbitration Agreement**

The validity and enforceability of a purported arbitration agreement is governed by state contract law. *Woodmen*, 479 F.3d at 565. The essential elements of a valid arbitration agreement under Arkansas law are: (1) competent parties, (2) subject matter, (3) legal consideration, (4)

---

[3] As far as the Court can tell, neither Weyerhaeuser nor Premier have formally asserted any claims against one another in this case. Weyerhaeuser's answer (ECF No. 6) contains no counterclaims, crossclaims, or third-party claims, and Premier has not appeared or taken any action in this case. However, Weyerhaeuser's briefing papers make clear that a dispute exists between Weyerhaeuser and Premier as to Premier's performance of obligations under the Weyerhaeuser-Premier contract.

mutual agreement, and (5) mutual obligations. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 119-20, 27 S.W.3d 361, 366 (2000). Arbitration agreements are examined in the same way as other contractual agreements, and the same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *See Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999); *Alltel Corp. v. Summer*, 360 Ark. 573, 576, 203 S.W.3d 77, 79 (2005).

The Court has reviewed the Weyerhaeuser-Premier contract (ECF No. 9-1) and finds that it contains a valid arbitration agreement. Arkansas law presumes that every person is sane, fully competent, and capable of understanding the nature and effect of his contracts, and a party claiming incompetence bears the burden of proof of overcoming that presumption. *Union Nat'l Bank of Little Rock v. Smith*, 240 Ark. 354, 356, 400 S.W.2d 652, 653 (1966). Premier offers no argument rebutting the presumption that its representative was competent at the time the Weyerhaeuser-Premier contract was executed, and the Court accordingly finds that the contract was signed by competent parties. The arbitration agreement's other required elements are also met: it has a definite subject matter; legal consideration is provided because the parties provided mutual promises to arbitrate any claims related to the contract; the parties mutually agreed to the arbitration agreement, indicated by the signatures of their representatives; and the terms of the arbitration agreement impose a mutual obligation to arbitrate. Accordingly, the Court finds that Weyerhaeuser and Premier entered into a valid and enforceable arbitration agreement.

### 2. Scope of Arbitration Agreement

The Court must now determine whether Weyerhaeuser and Premier's dispute falls within the scope of their agreement to arbitrate. In other words, the Court must decide whether they agreed to arbitrate the particular dispute involved in this case. *See Medcam, Inc. v. MCNC*, 414

5

F.3d 972, 974 (8th Cir. 2005).

Federal law determines whether the litigants' dispute falls within the scope of an arbitration agreement. *Donaldson Co. v. Burroughs Diesel, Inc.*, 518 F.3d 726, 731 (8th Cir. 2009). Any doubt must be settled in favor of arbitration. *See Daisy Mfg. Co., Inc. v. NCR Corp.*, 29 F.3d 389, 395 (8th Cir. 1994). Arbitration may be compelled under "a broad arbitration clause . . . as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985)).

The arbitration provision at issue is undoubtedly broad. It states that it applies to: "[a]ny dispute between the parties regarding this Contract, including a dispute over a party's performance of its obligations or interpretation of the Contract's terms, other than a dispute when a remedy sought in good faith is injunctive relief." (ECF No. 9-1, p. 12). Weyerhaeuser states that its dispute with Premier concerns Premier's performance of its obligations under the Weyerhaeuser-Premier contract.

Keeping in mind that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, the Court finds that the arbitration agreement covers Weyerhaeuser and Premier's dispute regarding Premier's performance of its obligations under the Weyerhaeuser-Premier contract. *See Daisy Mfg. Co., Inc.*, 29 F.3d at 395. Accordingly, the Court finds that Weyerhaeuser and Premier should be compelled to arbitrate their dispute related to the Weyerhaeuser-Premier contract.

### B. Arbitration of Graybar's Claims

Weyerhaeuser also asks the Court to compel Graybar to submit to arbitration of its claims against Defendants. Graybar argues that it should not be compelled to arbitrate its claims.

It is undisputed that Graybar is not a signatory to the Weyerhaeuser-Premier contract or its arbitration agreement. Indeed, the first line of the Weyerhaeuser-Premier contract explicitly lists the parties thereto as Weyerhaeuser and Premier. (ECF No. 9-1, p. 3). The Court finds that Graybar is not a party to the Weyerhaeuser-Premier contract or its arbitration agreement. Moreover, nothing in the record suggests that Graybar has executed any other arbitration agreement encompassing its claims in this case.[4]

"Generally, the terms of an arbitration contract do not apply to those who are not parties to the contract." *Am. Ins. Co. v. Cazort*, 316 Ark. 314, 320, 871 S.W.2d 575, 579 (1994); *see also Birts v. Vermillion*, No. 4:08-cv-4011-HFB, 2011 WL 13152677, at *5 (W.D. Ark. Mar. 14, 2011) (citing *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009)). However, the fact that a nonsignatory "is not literally covered by the arbitration clause is not dispositive." *Cazort*, 316 Ark. at 321, 871 S.W.2d at 579. "[N]onsignatories to a contract may be deemed as parties through ordinary contract and agency principles for the purposes of the Federal Arbitration Act." *Id.* This determination is made pursuant to state-law contract principles. *Id.*; *cf. Donaldson*, 581 F.3d at 731-32 (stating that "state contract law governs the ability of nonsignatories to enforce arbitration provisions").

Arkansas courts have found an arbitration agreement to be enforceable against a nonsignatory that: (1) is an intended third-party beneficiary of the agreement, *Broadway Health & Rehab, LLC v. Roberts*, 2017 Ark. App. 284, 7, 524 S.W.3d 407, 412 (2017); (2) is closely related to the signatories and when the parties specifically agreed that the arbitration agreement runs to their benefits, *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 785 (8th Cir. 2016) (applying Arkansas law); (3) has purchased a performance bond that incorporates by reference the arbitration

---

[4] The contract between Graybar and Premier has not been placed in the record and, thus, the Court has not reviewed that contract.

7

provision at issue, *Matson, Inc. v. Lamb & Assocs. Packaging, Inc.*, 328 Ark. 705, 711-12, 947 S.W.2d 324, 326-27 (1997); or (4) is seeking to rely on the underlying contract while simultaneously seeking to avoid the contract's arbitration provision. *Cazort*, 316 Ark. at 322, 871 S.W.2d at 579-80.

Citing non-binding caselaw from the Fifth Circuit, Weyerhaeuser argues that Graybar's claims should be referred to arbitration because they are inextricably intertwined with the dispute between Weyerhaeuser and Premier. Furthermore, citing only to the Arkansas Code, Weyerhaeuser also argues that Graybar's claims should be referred to arbitration because they necessarily rely on the Weyerhaeuser-Premier contract, as the Arkansas mechanics and materialmen's lien statute requires that a material supplier have a contract with "the owner, proprietor, contractor, subcontractor, or agent thereof." Ark. Code Ann. § 18-44-101(a). Weyerhaeuser argues that, but for Premier's status as a "contractor," created by the Weyerhaeuser-Premier contract, Graybar could not bring this lien foreclosure case.

In response, Graybar initially points out that Weyerhaeuser has not cited any Arkansas caselaw enforcing an arbitration agreement against a nonsignatory based on a theory of "inextricably intertwined" claims. Graybar also argues that an "intextricably intertwined" theory operates only to allow a nonsignatory to enforce an arbitration agreement against a signatory and, thus, that theory would not be applicable in this case in which a signatory seeks to enforce an arbitration agreement against a nonsignatory. Graybar argues further that its claims against Defendants are, regardless, independent of Weyerhaeuser and Premier's dispute regarding Premier's performance of obligations under the Weyerhaeuser-Premier contract. Graybar states that its claims are not related to and do not require reference to the Weyerhaeuser-Premier contract or Premier's alleged breach thereof, and that the result of Weyerhaeuser and Premier's arbitration

8

has no bearing on its statutory lien foreclosure claims. Thus, Graybar argues that it should not be compelled to submit to arbitration along with Weyerhaeuser and Premier.

The Court agrees with Graybar. State contract law controls whether an arbitration agreement applies to a nonsignatory. *See Cazort*, 316 Ark. at 320, 871 S.W.2d at 579; *see also Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 912-13 (8th Cir. 2010) (applying Missouri contract law in rejecting an "intertwined" theory of estoppel as a basis for allowing a signatory to an arbitration agreement to compel arbitration against a nonsignatory). As discussed above, Arkansas contract law provides that, absent certain recognized exceptions, "the terms of an arbitration contract do not apply to those who are not parties to the contract." *Cazort*, 316 Ark. at 320, 871 S.W.2d at 579. In arguing in favor of compelling Graybar to arbitration, Weyerhaeuser cites only Fifth Circuit caselaw allowing a nonsignatory to compel a signatory to arbitration pursuant to an "intertwined" theory of estoppel. Weyerhaeuser has provided the Court with no Arkansas caselaw recognizing, or even discussing, an "intertwined" theory of estoppel as a basis to allow a signatory to an arbitration agreement to enforce said agreement against a nonsignatory. Moreover, the Court is unaware of any such authority. Thus, the Court finds that Weyerhaeuser has failed to overcome Arkansas' general rule that the terms of an arbitration agreement do not apply to nonsignatories. The Court is unpersuaded by Weyerhaeuser's argument that it must refer Graybar's claims to arbitration based on an "intertwined" theory of estoppel, and the Court declines to do so.

The Court also disagrees with Weyerhaeuser's second argument that Graybar should be compelled to arbitrate its lien claims because those claims rely on Premier's status as a contractor, which was created by the Weyerhaeuser-Premier contract. At the onset, the Court finds that this argument fails because it ultimately relies on the same "intertwined" theory of estoppel that the

9

Court rejected above. (ECF No. 10, p. 7) ("Absent the relationship . . . between Premier and Weyerhaeuser, Graybar could not have an actionable lien. . . . [Graybar's] claims are, therefore, interdependent and intertwined with Weyerhaeuser's claims against Premier."). For the same reasons discussed above, the Court finds that Graybar cannot be compelled to arbitration based on an "intertwined" theory of estoppel.

Assuming *arguendo* that Weyerhaeuser's second argument does not rely on an "intertwined" theory of estoppel, the Court finds that it fails nonetheless. "[A] materialmen's lien cannot exist unless the lien claimant had a valid contract with the owner, contractor, or their agent." *Fla. Oil Inv. Grp., LLC v. Goodwin & Goodwin, Inc.*, 2015 Ark. App. 209, 7, 463 S.W.3d 323, 327 (2015) (citing Ark. Code Ann. § 18-44-101(a)). This, however, does not necessarily mean that Graybar's claims sound in contract because a statutory lien foreclosure claim is a separate cause of action. *See RMP Rentals v. Metroplex, Inc.*, 356 Ark. 76, 81-82, 146 S.W.3d 861, 865 (2004) (noting the distinction between a claim for breach of contract and a statutory claim for lien foreclosure).

Although Graybar's claims have their genesis in the Weyerhaeuser-Premier contract, it does not rely on that contract. If anything, Graybar's claims could rely on the separate contract between it and Premier. However, Graybar's complaint does not assert a claim for breach of contract at all. Instead, Graybar asserts only a statutory lien foreclosure claim against Defendants. Weyerhaeuser cites no caselaw for the proposition that a material supplier's contractual relationship with a contractor is interdependent and intertwined with a separate contractual relationship—containing an arbitration clause—between the contractor and owner, such that the owner can compel arbitration against the material supplier when it is not otherwise a party to an arbitration agreement. Thus, the Court is unconvinced that Graybar should be compelled to

10

arbitration. Accordingly, the Court declines to order Graybar to submit to arbitration alongside Weyerhaeuser and Premier.

**C. Stay Pending Completion of Arbitration**

Weyerhaeuser argues alternatively that the Court should stay this case pending the resolution of the arbitration between Weyerhaeuser and Premier. Graybar disagrees.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). It is well established that district courts have the power to stay litigation between a signatory and a nonsignatory to an arbitration agreement for the duration of parallel arbitration proceedings that involve "common questions of fact that are within the scope of the arbitration agreement.'" *U.S. for use of Lighting & Power Servs., Inc. v. Interface Const. Corp.*, 553 F.3d 1150, 1156 n.5 (8th Cir. 2009) (quoting *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777, 782 (8th Cir. 2001)). To determine whether to issue a discretionary stay of a case pending the completion of arbitration, courts weigh three factors: (1) the risk of inconsistent rulings; (2) the extent to which the parties will be bound by the arbitrator's decision; (3) the prejudice that may result from delays. *AgGrow Oils*, 242 F.3d at 783.

Weyerhaeuser argues that a discretionary stay is warranted because the arbitration between Weyerhaeuser and Premier will determine common questions of fact that would be litigated in this case, namely, whether Premier breached its obligation under the Weyerhaeuser-Premier contract to keep the Weyerhaeuser mill free of liens and to satisfy any liens. Weyerhaeuser also argues that the arbitration will need to determine the validity and amount of Graybar's lien to quantify damages, which will necessarily involve the same evidence that would be presented in this case.

11

Weyerhaeuser argues further that a discretionary stay would prevent inconsistent rulings, as the arbitration will determine whether Weyerhaeuser or Premier is responsible for satisfying Graybar's lien. Weyerhaeuser argues, without elaborating, that a significant risk of inconsistent outcomes exists if this case proceeds concurrently with the arbitration.

Graybar responds that the Weyerhaeuser-Premier contract—and Premier's performance thereunder—are irrelevant to this suit, in which Graybar attempts to assert and enforce a statutory lien for Premier's alleged unpaid debt to Graybar. Graybar also argues that this case and the arbitration have no common fact issues related to damages because there are no valuation determinations to be made in this case, as Graybar has provided the Court with the unpaid invoice listings reflecting the materials it supplied to the Weyerhaeuser mill and that were incorporated into the facility. Graybar argues further that allowing this case to proceed concurrently with the arbitration will not result in inconsistent rulings because "the Arkansas Mechanic's and Materialmen's Liens statutes expect the owner of the property—Weyerhaeuser in this instance—will be the party ultimately responsible for the satisfaction of the lien." (ECF No. 13, p. 13). Graybar asserts that, after satisfying Graybar's lien, Weyerhaeuser could then pursue a claim against Premier for the resultant costs incurred. Accordingly, Graybar urges the Court to determine that this case should proceed concurrently with the arbitration.

The Court agrees with Graybar. The arbitration between Weyerhaeuser and Premier will determine whether Premier breached its obligation under the Weyerhaeuser-Premier contract to keep the Weyerhaeuser mill free of liens and to satisfy any subsequent liens. However, Weyerhaeuser has not asserted a breach-of-contract claim—or any claim whatsoever—against Premier in this case. Moreover, as discussed above, the Court has found that Graybar's statutory lien foreclosure claim does not rely on the Weyerhaeuser-Premier contract but, rather, relies on

Graybar's separate contract with Premier. Graybar's statutory lien claim is separate and distinct from Weyerhaeuser and Premier's contract dispute. Thus, the Court is unpersuaded that the arbitration of whether Premier breached the Weyerhaeuser-Premier contract will determine common questions of fact falling within the scope of the arbitration agreement that will also be decided in this case.

The Court is also unpersuaded that inconsistent rulings are likely to occur if this case and the arbitration proceed concurrently. The arbitration between Weyerhaeuser and Premier will determine whether Premier breached the Weyerhaeuser-Premier contract. Weyerhaeuser suggests that the arbitration will also decide whether Weyerhaeuser or Premier must satisfy Graybar's lien and that inconsistent results may occur if this case continues concurrently. Weyerhaeuser does not elaborate further, and the Court agrees with Graybar that inconsistent results are unlikely to occur. As far as the Court can tell, if the arbitrator finds that Premier has breached the Weyerhaeuser-Premier contract by failing to keep the Weyerhaeuser mill free of liens, Premier will then be liable to Weyerhaeuser for resultant money damages. However, this hypothetical result, if reached, will not determine whether Weyerhaeuser or Premier must satisfy Graybar's mechanic's and materialmen's lien. It appears that pursuant to Arkansas law, if Graybar is able to recover on the lien, Weyerhaeuser—the owner of the property on which the lien was placed—will ultimately be responsible for satisfying the lien. "If indemnification or costs of defense are appropriate . . . [Weyerhaeuser] may seek such reimbursement separately and independently from this litigation." *A.O.A. v. Doe Run Res. Corp.*, No. 4:11CV44 CDP, 2011 WL 6091724, at *5 (E.D. Mo. Dec. 7, 2011), *aff'd sub nom. Reid v. Doe Run Res. Corp.*, 701 F.3d 840 (8th Cir. 2012).

The parties do not discuss the remaining factors, namely, the extent to which parties will be bound by the arbitrator's decision and whether prejudice will result from delays. *AgGrow Oils*,

242 F.3d at 783. However, the Court has nonetheless reviewed these factors and, for the following reasons, finds that they weigh against issuing a discretionary stay.

"To determine the binding [e]ffect of the arbitration ruling, the Court must consider whether the parties agreed to resolve [their] controversy in an arbitral forum." *Maytag Corp. v. Turbochef Techs., Inc.*, 250 F. Supp. 2d 1087, 1090 (S.D. Iowa 2002) (citing *Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 42 (3rd Cir. 1985)). As discussed above, the Court has found that Graybar did not agree to arbitrate its lien foreclosure claim and it appears from the record presently before the Court that Graybar will not be a party to any arbitration with either of Defendants. Thus, the Court finds that Graybar will not be bound by the arbitration between Weyerhaeuser and Premier. The Court finds it irrelevant that the arbitrator will determine whether Premier breached the Weyerhaeuser-Premier contract because, regardless of how that question is answered, Graybar will not lose its ability to litigate its statutory lien claim. Accordingly, the Court finds that this factor weighs against issuing a discretionary stay of this case.

The Court also finds that Graybar would suffer prejudice from a delay of this case, thereby weighing in favor of denying the request for a discretionary stay. Weyerhaeuser correctly points out that there is a strong policy favoring arbitration and that arbitration agreements are rigorously enforced, even if the result is "piecemeal litigation." *AgGrow Oils*, 242 F.3d at 783. "That policy obtains, however, only where a party has agreed to arbitration," and "'piecemeal litigation' . . . does not, by itself, constitute prejudice to the [arbitrating party] that would offset the prejudice to [the non-arbitrating party] of delaying a jury's determination of [the non-arbitrating party's] claim." *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1018 (N.D. Iowa 2018). As the Court has repeatedly indicated throughout this order, Graybar has not

agreed to arbitration and, thus, the federal policy favoring arbitration is of little importance in deciding this factor. "Similarly, although the policy favoring arbitration may support [Weyerhaeuser's] desire to have . . . matters resolved in arbitration in the first instance, it does not translate into a policy favoring a stay of all claims in this case, because it cannot trump [Graybar's] right to a prompt jury determination of [its] claim." *Id.* Weyerhaeuser gives no indication of how long the arbitration process may take to complete and, thus, the Court finds that rejecting a discretionary, indefinite stay of Graybar's claims properly honors Graybar's Seventh Amendment right to a jury trial without prejudicing Weyerhaeuser's contractual right to the arbitration of it and Premier's breach of contract dispute.

In sum, the Court has weighed the relevant factors in their totality and finds that a discretionary stay of this case pending the completion of Weyerhaeuser and Premier's arbitration is not warranted. Accordingly, Weyerhaeuser's request for a stay of this case shall be denied.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Weyerhaeuser's Motion to Compel Arbitration and Stay Claims (ECF No. 9) should be and hereby is **GRANTED IN PART AND DENIED IN PART**. Weyerhaeuser and Premier's claims against one another regarding the Weyerhaeuser-Premier contract are hereby referred to arbitration in accordance with the parties' agreement. Graybar's claims shall remain with this Court for further proceedings.

**IT IS SO ORDERED**, this 26th day of March, 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge